IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

ROY EDWARD OLIVER and )
MICHAEL ANTHONY SOZA, )
)
    PLAINTIFFS, )
)
v. )    CASE NO. 1:06CV430-WHA
)
THE CITY OF DOTHAN, )
ALABAMA, and )
DOUGLAS JOHNSON, )
)
    DEFENDANT. )

## AFFIDAVIT OF WILLIAM SHANE ASH

STATE OF ALABAMA,
HOUSTON COUNTY.

Before me, the undersigned authority, personally appeared William Shane Ash, who, being by me first duly sworn, did depose and say as follows:

My name is William Shane Ash, and I am over the age of nineteen years and reside in Geneva County, Alabama and I have personal knowledge of the things and matters set forth herein.

In order to be employed as a Dothan Police Officer, I passed a Civil Service exam, was interviewed by a Candidate Selection Board, passed a physical and mental exam. I also underwent a background check and passed a polygraph exam. After I successfully completed the process I was employed by the City of

EXHIBIT "C"

Dothan Police Department on December 29, 2002. On May 3, 2003, prior to attending the Police Academy, I completed 200 hours training with the Dothan Probationary Police Officer's Program which included training in the use of force. I then completed the 480 hours of training at the Selma Police Academy and I was certified as a police officer by the Alabama Peace Officers Standard and Training Commission on July 25, 2003. At the Police Academy, I received training in the proper use of force and I have received additional training in the use of force with the Dothan Police Department, including a four hour class on the use of force January 13, 2004, approximately four months prior to this incident. I was trained and certified to carry a taser on January 13, 2004. Additionally, all officers are required to receive a minimum of twelve hours training per year to remain a certified police officer pursuant to Ala. Code § 36-21-51 (1975). As a police officer with the City of Dothan, I had to follow the Personnel Rules and Regulations of the City of Dothan, the Procedural General Orders of the Police Department, and all Municipal, State and Federal laws. On January 5, 2006, I left the Police Department to attend college full time.

On May 16, 2004, at approximately 4:00 a.m., I was working my patrol shift. When I left the Dothan Police Department located at 210 North St. Andrews Street, I proceeded south on North St. Andrews Street and saw a crowd standing on the sidewalk across from the Stardust Lounge located at 137 North St. Andrews

Street. I stopped the car and asked what was going on. The crowd pointed toward the intersection of East Main Street and South St. Andrews Street which was approximately 100 yards away. When I looked toward the intersection, I could see three individuals standing in the street. Two of the individuals were beating and kicking a fourth person who was laying in the road. I drove toward the intersection and activated my emergency lights. As I was approaching the intersection, one of the individuals later identified as Jake Metcalf got a running start and jumped on the hood of a BMW that was parked on the east side of the street. The individual that was on the ground, later identified as Michael Sewell, began to crawl toward me then got up and staggered to the back of my patrol car. When I exited my car, I was confronted with three people who had been engaging in violent, disorderly behavior. Mr. Metcalf had jumped on the hood of a car and the other two individuals had been beating and kicking Mr. Sewell who was laying in the street. Mr. Metcalf was the closest one of the three individuals so I took him into custody on the charge of disorderly conduct pursuant to Ala. Code § 13A-11-7(a)(1) (1975) for jumping on the car. Mr. Sewell's face, head and shirt were covered in blood and he appeared to be seriously injured. Under Alabama law, an assault can be a felony depending on the extent of the injury. Mr. Sewell injuries appeared to be severe enough that it could constitute a felony assault charge under Ala. Code § 13A-6-21 (1975). As I was handcuffing Mr. Metcalf and attempting to secure him,

the two individuals who had been beating Mr. Sewell were standing near the BMW automobile that Mr. Metcalf had jumped on. Sgt. Johnson arrived and I identified the plaintiffs as being involved and told him to arrest them. We had no idea if either of the suspects were armed. We did know they were violent based on the beating they had been inflicting on Mr. Sewell. My in-car camera was recording but the front of my car was pointed toward a building on the corner of E. Main and S. Saint Andrews Street. However, you can hear my audio and Sgt. Johnson orders the men to get down more than once. (Ex. "E" Ash video). Sgt. Johnson's video, which I have reviewed, fairly and accurately depict the events that occurred. Sgt. Johnson's video has no audio but shows him approach the first individual who was standing in the street - later identified as Anthony Soza. When Mr. Soza refused to comply with Sgt. Johnson's orders to get down, he was sprayed with a burst of capstun (pepper spray). Sgt. Johnson then forced him to the ground. The other individual, later identified as Mr. Oliver went toward Sgt. Johnson and as Sgt. Johnson turned to face him, he backed up. (Ex. "D" Johnson's video). He also refused to get down as he was ordered to do and the video tape shows Sgt. Johnson point toward the ground. Mr. Oliver then walked away from Sgt. Johnson who went after Mr. Oliver and sprayed him with a burst of capstun. (Ex. "D" Johnson's video). Sgt. Johnson then forced Mr. Oliver to the ground. (Ex. "D" Johnson's video). At this point, I had secured Mr. Metcalf in my car and Sgt. Johnson was

4

attempting to control the two individuals that had been beating Mr. Sewell by himself. Once both individuals were on the ground, Sgt. Johnson stood between them and ordered them to stay on the ground. (Ex. "D" Sgt. Johnson's video, Ex. "E", Ash video). Officer Ken Long then arrived on the scene. Officer Long handcuffed Mr. Soza without incident. Having secured Mr. Metcalf, I began to talk to the witness who had seen the altercation. After talking to the witness, I walked back toward my car and saw Mr. Oliver on the sidewalk. Oliver was not secured by handcuffs, nor, to my knowledge had he been patted down for weapons. I knelt down and attempted to handcuff Mr. Oliver and gave him repeated orders to give me his hands which can be heard on my in-car video tape. Officer Long came to assist me and he tried to pull Mr. Oliver's hands behind his back in order to handcuff him. Mr. Oliver was resisting arrest and refusing to comply with my orders to give me his hands. I removed the cartridge that contains the wire probes from my taser. When Mr. Oliver continued to refuse to give me his hands after repeated orders to do so, and physically resisting our attempts to pull his hands behind his back, I placed the taser in his back and drive stunned him. As soon as officer Long had the subject handcuffed, I stopped tasing him. This took several seconds. Mr. Oliver was searched and his I.D. located. We then learned that both Mr. Oliver and Mr. Soza were military police officers stationed at Fort Rucker, Alabama. Sgt. Johnson and I stood Mr. Oliver up and took him to a police car. I

5

then went to Mr. Sewell who was still bleeding and asked how he was going to go to the hospital. He asked for an ambulance so I requested fire medics and an ambulance responded to the scene. Neither Mr. Soza nor Mr. Oliver complained of any injury or requested medical assistance in my presence. Had either Mr. Oliver or Mr. Soza complained of injury, they would have been transported to the South East Alabama Medical Center and checked before being taken to jail. Mr. Sewell was transported to the hospital by ambulance. I charged Mr. Oliver and Mr. Soza with Disorderly Conduct under Ala. Code §13A-11-7(A)(1)(1975) for fighting in the street. Mr. Sewell later signed misdemeanor warrants against Mr. Oliver and Mr. Soza for assault. I, nor any other officer of the Dothan Police Department used excessive force against the Plaintiffs. Mr. Oliver and Mr. Soza appeared intoxicated, they were violent, and refusing to comply with Sgt. Johnson orders to get down on the ground which resulted in them being sprayed with capstun. When I tried to handcuff Mr. Oliver, he physically resisted and refused to give me his hands after repeated orders to do so, which resulted in my tasing him to get him to comply. Only that force necessary to control and arrest the Plaintiffs was used.

Further Affiant sayeth not.

_____
William Shane Ash

STATE OF ALABAMA,
HOUSTON COUNTY.

    Sworn to and subscribed before me this __24th__ day of May, 2007.

                                            *Linda R. Johnson*
                                            Notary Public

My Commission Expires       LINDA R. JOHNSON
                               Notary Public, AL State at Large
                               My Comm. Expires Nov. 17, 2009