IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| ROY EDWARD OLIVER and | ) | |
| MICHAEL ANTHONY SOZA, | ) | |
| | ) | |
| PLAINTIFFS, | ) | |
| | ) | |
| v. | ) | CASE NO. 1:06CV430-WHA |
| | ) | |
| THE CITY OF DOTHAN, | ) | |
| ALABAMA, and | ) | |
| DOUGLAS JOHNSON, | ) | |
| | ) | |
| DEFENDANT. | ) | |

## DEFENDANT, CITY OF DOTHAN'S, BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Comes now the Defendant, City of Dothan, by and through its undersigned attorney, pursuant to Rule 56, F.R.Civ.P., and moves this Honorable Court to enter summary judgment in its favor, and in support thereof Defendant states as follows:

### Facts

On May 16, 2004, at approximately 4:00 A.M., Mr. Michael Sewell and Jake Metcalf left a nightclub located at 145 South Saint Andrews Street in Dothan, Alabama. When they were outside the club, a fight broke out between Plaintiffs,

Roy Edward Oliver [1] ("Oliver") and Michael Anthony Soza ("Soza"), and another individual, (Ex. "A", Affidavit of Michael Sewell, Ex. "B", Roy Edward Oliver's deposition, p.13). Mr. Oliver admitted he had been drinking prior to the altercation. (Ex. "B", Roy Edward Oliver's deposition, p. 10). Mr. Sewell was knocked to the ground where Oliver and Soza proceeded to kick him in the head, face and chest. (Ex. "A", Affidavit of Michael Sewell). Mr. Sewell received extensive injuries, requiring stitches to his face and staples to close his head wound. Officer Shane Ash saw the altercation taking place in the street and drove to the intersection of Main Street and South Saint Andrews Street. Fighting in the street constitutes disorderly conduct under Ala. Code § 13A-11-7 (1975). (Ex. "C", Affidavit of Shane Ash). Officer Ash then witnessed Mr. Jake Metcalf jump on the hood of a BMW car. (Ex. "C", Affidavit of Shane Ash). Upon his arrival Officer Ash took Mr. Metcalf into custody and charged him with disorderly conduct under Ala. Code § 13A-11-7 (1975) for jumping on the hood of the car. (Ex. "C", Affidavit of Shane Ash). Mr. Sewell was able to get up and make it to the back of Officer Ash's patrol car. His face, head and shirt were covered in blood. (Ex. "C", Affidavit of Shane Ash, Ex. "A", Affidavit of Michael Sewell). Sgt. Douglas Johnson then arrived on the scene and Ash directed him to take Soza

---

[1] Mr. Oliver and Mr. Soza were both military police officers stationed at Fort Rucker, Alabama at the time of this incident. (Ex. "H", Affidavit of Tim Ellison).

and Oliver into custody. (Ex. "C", Affidavit of Shane Ash). Sgt. Johnson approached Soza, ordering him to get down. (Ex. "D", Sgt. Douglas Johnson's in-car videotape, Ex. "E", Shane Ash's in-car videotape). When Soza refused, Sgt. Johnson sprayed him with Cap-stun (pepper spray) and forced him to the ground. (Ex. "D", Sgt. Douglas Johnson's in-car videotape). Once Soza was on the ground, Sgt. Johnson confronted Oliver, and ordered him to get down. (Ex. "B", Roy Edward Oliver's deposition, p. 21). When he refused to get down as ordered, Oliver was then sprayed with Cap-stun and had to be forced to the ground. (Ex. "D", Sgt. Douglas Johnson's in-car videotape). Sgt. Johnson did not use any additional force against either of the Plaintiffs. He took a position between the two Plaintiffs until other officers arrived. (Ex. "D", Sgt. Douglas Johnson's in-car videotape; Ex. "B", Roy Edward Oliver's deposition, p. 21). When Officer Long arrived he handcuffed Soza without any problem. (Ex. "F", Affidavit of Ken Long, Ex. "D", Sgt. Douglas Johnson's in-car videotape). Officer Ash then spoke with witnesses to the event and as he goes back toward his car he sees that Oliver has not been secured by handcuffs. (Ex. "C", Affidavit of Shane Ash; Ex. "D", Sgt. Douglas Johnson's in-car videotape). Ash repeatedly tells Oliver to put his hands behind his back and he refuses. (Ex. "C", Affidavit of Shane Ash; Ex. "E", Shane Ash's in-car videotape; Ex. "F", Affidavit of Ken Long). Officer Ash removed the cartridge containing the wire probes from his taser, and drive-stunned

Oliver until Officer Long was able to get him handcuffed.  As soon as Oliver was handcuffed the officer stopped the taser.  (Ex. "C", Affidavit of Shane Ash; Ex. "F", Affidavit of Ken Long; Ex. "B", Roy Edward Oliver's deposition, p. 27). Officer Long then helped Soza up and placed him in a patrol car.  (Ex. "D", Sgt. Douglas Johnson's in-car videotape, Ex. "F", Affidavit of Ken Long).  Sgt. Johnson and Officer Ash stood Oliver up and he was placed in a patrol car.  (Ex. "D",  Sgt. Douglas Johnson's in-car videotape; Ex. "F", Affidavit of Ken Long; Ex. "C", Affidavit of Shane Ash).  Officer Ash then talked to Mr. Sewell and called for fire medics and an ambulance.  Mr. Sewell was transported to the hospital by ambulance where he was treated for his injuries.  (Ex. "A", Affidavit of Michael Sewell).  Oliver and Soza were taken to the Dothan city jail where they were booked on the charge of Disorderly Conduct pursuant to Ala. Code § 13A-11-7 (1975).  The Plaintiffs' booking at the jail was recorded on videotape and neither of the Plaintiffs complained of problems or requested medical assistance at the jail.  (Ex. "G", Jail booking videotape, Ex. "B", Roy Edward Oliver's deposition, p. 30-31).

On May 28, 2004 Mr. Sewell signed a warrant against Oliver and Soza for assault pursuant to Ala. Code 13A-6-22 (1975).  (Ex. "A", Affidavit of Michael Sewell).  On October 27, 2005, Oliver and Soza were convicted in the Dothan Municipal Court of Disorderly Conduct and the Assault charges.  The Plaintiffs

subsequently sued the City and Douglas Johnson for excessive force and assault and battery. The Defendant Douglas Johnson is no longer employed by the City of Dothan and is currently in Afghanistan working for a defense contractor. On November 14, 2006, the Court dismissed the case against Defendant Douglas Johnson, leaving the City of Dothan as the only remaining Defendant. (Document 12, Court Order).

## SUMMARY JUDGMENT STANDARD

Summary judgment must be entered on a claim if it is shown "that there is no genuine issue as to any material fact that the moving party is entitled to a judgment as a matter of law." F.R.C.P., 56(c). On a motion for summary judgment the Court is to construe the evidence and facts rising from and in a light most favorable to the non-moving party. Adickes v. S.H. Kress and Co., 398 U.S. 144, 157, 90 S. Ct. 1598, 1608 (1970). "The plain language of Rule 56(c) mandates the entry of summary judgment. . . against a party that fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corporation v. Catrett, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2552 (1986). Furthermore "there is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. If the evidence is merely colorable or it is not significantly probative, summary judgment may be

granted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50, 106 S. Ct. 2505,

2511 (1986).

## ARGUMENT

### I.   PLAINTIFFS FAILED TO ESTABLISH A FOURTH AMENDMENT VIOLATION.

**(A)   Plaintiffs fail to state a claim against the City of Dothan because they did not suffer a constitutional violation.**

(1)  Law

To state a claim under 42 U.S.C., § 1983, the Plaintiffs must have been

deprived of their rights, privileges or immunities secured by the Constitution or the

laws of the United States. Parratt v. Taylor, 451 U.S. 527, 535, 101 S. Ct. 1908,

1912 (1981); overruled on other grounds by Daniels v. Williams, 474 U.S. 327,

106 S. Ct. 662 (1986). Because the Plaintiffs were not deprived of the right,

privilege or immunities secured by the Constitution, their claim fails. See Rooney

v. Watson, 101 F.3d 1378, 1381-82 (11th Cir. 1996) (An inquiry into a

governmental entity's custom or policy is relevant only when a constitutional

deprivation has occurred). Puglise v. Cobb County, 4 F. Supp. 1172 (N.D. GA

1998). Accordingly, summary judgment must be entered in favor of the City of

Dothan.

(2)  Probable Cause.

Officer Ash had probable cause to arrest the Plaintiffs for Disorderly Conduct pursuant to Ala. Code §13A-11-7 (1975) which holds in part: "(a) A person commits the crime of disorderly conduct if with the intent to cause public inconvenience, annoyance or alarm, or reckless creating a risk thereof, he: (1) Engages in fighting or in violent tumultuous or threatening behavior." Officer Ash saw the Plaintiffs in the street beating Mr. Sewell, causing him extensive injuries. (Ex. "C", Affidavit of Shane Ash). Officer Ash, witnessing this altercation, had sufficient probable cause to arrest the Plaintiffs for disorderly conduct. Under Ala. Code § 15-10-3(A)(1) an officer may arrest a person without a warrant if a public offense has been committed or a breach of the peace threatened in the officer's presence. See also, Rule 4.1(A)(7)(ii), Ala.R.Crim.P. Under federal law probable cause exists when an arrest is objectively reasonable based on the totality of the circumstances. McCormick v. City of Fort Lauderdale, 333 F.3d 1234 (11th Cir. 2003). In this case the officer had sufficient probable cause to arrest the Plaintiffs. The courts have made it clear that the right to make an arrest carries with it the right to use some degree of physical coercion or threat to effect the arrest. Graham v. Connor, 490 U.S. 386, 396, 109 S. Ct. 1865, 1871-72 (1989). Furthermore, the Plaintiffs have not alleged that the arrest was unlawful or that the officer did not have probable cause to arrest and detain them.

(3) The Plaintiffs were not subject to excessive force.

In determining if excessive force was used, the courts look to the totality of the circumstances to determine if the manner of arrest was reasonable. Tennessee v. Garner, 471 U.S. 1, 8-9, 105 S. Ct. 1694, 1700 (1985). To determine if the force was reasonable, courts must examine (1) the need for the application of force, (2) the relationship between the need and amount of force used, and (3) the extent of the injury inflicted. Draper v. Reynolds, 369 F.3d 1270, 1277, 1278 (11th Cir. 2004), citing Lee v. Ferraro, 284 F.3d 1188, 1198 (11th Cir. 2002). Furthermore, "the calculus of reasonableness must embody allowances for the fact that police officers are often forced to make split-second judgments in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." Graham v. Connor, 490 U.S. 386, 396-97, 109 S. Ct. 1865, 1872 (1989). In Lee v. Ferraro the court explained that the force used must be reasonably proportionate to the need, and measured by the severity of the crime, the danger to the officer and the risk of flight. Lee, 284 F.3d at 1198.

(a)  Need for the Application of Force.

In this case Sgt. Douglas Johnson arrived at the scene while officer Ash was attempting to secure another suspect in his patrol car. Mr. Sewell was behind Officer Ash's car bleeding from the head and face. (Ex. "C", Affidavit of Shane Ash, Ex. "A", Affidavit of Michael Sewell). Officer Ash directed Sgt. Johnson to arrest the two Plaintiffs based on the incident he had just witnessed. (Ex. "C",

Affidavit of Shane Ash).  Sgt. Johnson approached the two Plaintiffs by himself.

He ordered them to get on the ground as he approached and they both refused to

comply with his orders.  (Ex. "E", Shane Ash's in-car videotape, Ex. "D", Sgt.

Douglas Johnson's in-car videotape).

When Soza refused to comply with Sgt. Johnson's order, he sprayed Soza

with Cap-stun (pepper spray) and forced him to the ground.  (Ex "D", Sgt. Douglas

Johnson's in-car videotape).  Sgt. Johnson never punched, kicked or used any

additional force against Soza.  Once he had Soza on the ground, he never touched

him again.  (Ex. "D", Sgt. Douglas Johnson's in-car videotape, Ex. "B", Roy

Edward Oliver's deposition, p. 21).  Sgt. Johnson then directed his attention to

Oliver, who even after seeing Soza sprayed and forced to the ground, refused to

comply with Sgt. Johnson's order to get down.  Oliver was then sprayed with Cap-

stun (pepper spray) and forced to the ground.  (Ex. "D", Sgt. Douglas Johnson's in-

car videotape).  Johnson used no other force against Oliver.  The force used to gain

control over the Plaintiffs was objectively reasonable based on the fact the

Plaintiffs had been involved in a violent altercation, resulting in one person being

transported to the hospital by ambulance, they were refusing to comply with the

lawful orders of the officer, and Sgt. Johnson was attempting to arrest and control

two suspects alone, not knowing if either of them was armed.  Furthermore, Sgt.

Johnson's use of Cap-stun (pepper spray) to effectuate the arrest of Oliver and

Soza was reasonably proportionate to the difficult, tense and uncertain situation that he was faced with in taking two violent suspects into custody by himself.

After Sgt. Johnson had both Plaintiffs on the ground, Officer Long arrived and handcuffed Soza without incident. (Ex. "F", Affidavit of Ken Long). Officer Ash then attempted to handcuff Oliver. (Ex. "C", Affidavit of Shane Ash, Ex. "D", Sgt. Douglas Johnson's in-car videotape). Oliver refused to comply with Officer Ash's orders and physically resisted the officers' attempt to handcuff him. (Ex. "C", Affidavit of Shane Ash; Ex. "F", Affidavit of Ken Long; Ex. "E", Shane Ash's in-car videotape; and, Ex. "B", Roy Edward Oliver's deposition, p. 25-26) Oliver's actions constituted Resisting Arrest under Ala. Code § 13A-3-28. Even with Officer Long's assistance the officers could not get Oliver to comply. Officer Ash was confronted with a suspect who by his own admission had been drinking (Ex. "B", Roy Edward Oliver's deposition, p. 10) and who Officer Ash had witnessed assaulting another person. Oliver ignored the officer's verbal order and you can hear Officer Ash yelling on his videotape for Oliver to put his hands behind his back. When Oliver refused to comply with the order, Officer Ash then used his taser to bring Oliver into compliance so he could be handcuffed. Again, the force used by Officer Ash was not excessive. (Ex. "C", Affidavit of Shane Ash, Ex. "F", Affidavit of Ken Long). As soon as Oliver was handcuffed the officer stopped using force. (Ex. "B", Roy Edward Oliver's deposition, p. 27). To

avoid being tased, all Oliver had to do was submit to handcuffing.  The Plaintiffs, not the police officers, dictated what force would be used in this situation.

    (b)  <u>Amount of Force Used</u>.

    The force used in the case was de minimis.  The application of de minimis force without more will not support an excessive force claim under the Fourth Amendment.  <u>Nolin v. Isbell</u>, 207 F.3d 1253, 1257 (11th Cir. 2000).  The courts have recognized "that the typical arrest involves some force and injury." <u>Rodriguez v. Farrell</u>, 280 F.3d 1341, 1357 (11th Cir. 2002).

    There are numerous cases discussing de minimis force.  <u>Nolin v. Isbell</u>, 207 F.3d 1253, 1257 (11th Cir. 2000) (the officer grabbed plaintiff, shoved him against a van a few feet away, pushed his knee in plaintiff's back and his head against the van); <u>Jones v. City of Dothan</u>, 121 F.3d 1456, 1458 (11th Cir. 1997) (slammed plaintiff against a wall, kicked his legs apart); <u>Post v. City of Fort Lauderdale</u>, 7 F.3d 1552, 1556 (11th Cir. 1993) (pushed Plaintiff against a wall while handcuffed).  See also, <u>Lee v. Ferraro</u>, 284 F.3d 1188, 1199-1200 (11th Cir. 2002).

    In <u>McCormick v. City of Fort Lauderdale</u>, 333 F.3d 1234, 1245 (11th Cir. 2003), the court held that pepper spray ordinarily caused only temporary discomfort and it may reasonably be deployed against a potentially violent suspect especially if the suspect has already committed an assault on another person.   In this case a reasonable officer could have believed that the force used was

reasonably necessary based on the facts confronting Sgt. Johnson and Officer Ash the night of this incident. Sgt. Johnson sprayed both Plaintiffs with Cap-stun and forced them to the ground when they refused to comply with his order to get down. Sgt. Johnson's actions were reasonable under the circumstances he faced at the time. Officer Ash ordered Oliver to give him his hands in order to handcuff him. When Oliver refused and physically resisted the officer's attempt to handcuff him, he was tased. As soon as he was handcuffed, Officer Ash stopped tasing him. (Ex. "B", Roy Edward Oliver's deposition, p. 27). Officer Ash's actions were also justified and reasonable based on the totality of the circumstances. See, Draper v. Reynolds, 396 F.3d 1270 (11th Cir. 2004).

(3) Extent of Injury Inflicted.

With regard to injury, neither of the Plaintiffs complained of injury nor requested medical treatment at the scene. (Ex. "C", Affidavit of Shane Ash, Ex. "F", Affidavit of Ken Long). Both the Plaintiffs were taken to the Dothan city jail where they were charged with disorderly conduct. The booking process was captured on videotape and neither of the Plaintiffs complained of any injury while at the Dothan City Jail. (Ex. "G", Jail booking videotape). In fact, both Plaintiffs can be heard laughing as they talk to the jailer who is booking them. (Ex. "G", Jail booking videotape). Oliver testified he did not request medical treatment at the jail. (Ex. "B", Roy Edward Oliver's deposition, p. 30-31). On August 5, 2004 the

Plaintiffs' filed an Incident/Offense Report regarding the fight on May 16, 2004, and alleged their various injuries were from being assaulted by Mr. Metcalf and Mr. Sewell.  (Ex. "H", Affidavit of Tim Ellison).  The Plaintiffs did not allege that the police officers injured them in any way nor did they file a complaint against the officers with the Dothan Police Department.  (Ex. "B", Roy Edward Oliver's deposition, p. 37-38).  Furthermore, the Plaintiffs do not allege that the police officers or any member of the jail staff refused to provide them with medical treatment.

The Plaintiffs did not suffer a constitutional violation and therefore their Fourth Amendment claim against the City in Counts I and II is due to be dismissed.  Even if the Plaintiffs could establish a constitutional violation they cannot establish a policy or custom of the City of Dothan caused the constitutional violation.

## II.  PLAINTIFFS FAIL TO ESTABLISH A POLICY OR CUSTOM OF THE CITY OF DOTHAN CAUSED THEIR ALLEGED INJURIES.

(1)  Law.

The U.S. Supreme Court has placed strict limitations on municipal liability and there is no respondeat superior liability for municipalities under 42 U.S.C. § 1983.  Monell v. Department of Social Services, 436 U.S. 658, 93 S. Ct. 2018 (1978).  Instead, a municipality is liable only when an official policy or custom

caused the constitutional violation. The Plaintiffs must also establish that the municipal policy was the moving force behind the constitutional violation. Monell, 436 U.S. at 694, 98 S. Ct. at 2037-38. Therefore, the Plaintiffs must identify the official policy or custom which caused their injuries. Board of County Commissioners v. Brown, 520 U.S. 397, 117 S. Ct. 1382, 1388 (1997). During his deposition Oliver testified that the reason he sued the City of Dothan was because Johnson was their employee. (Ex. "B", Roy Edward Oliver's deposition, p. 39).

To succeed on their claim, the Plaintiffs must show that an official policy or custom was the moving force behind the constitutional violation. Therefore, at minimum the Plaintiff's must identify the Municipal policy and show an affirmative link between the policy and the particular constitutional violation. Griffin v. City of Clanton, AL, 932 F. Supp. 1359 (M.D. Ala. 1996) citing City of Oklahoma City v. Tuttle, 471 U.S. 808, 823, 105 S. Ct. 2427, 2436 (1985). Here the Plaintiffs do not specifically identify what policy or custom they claim violated their civil rights. They simply rely on the broad allegation that the City of Dothan had an express or tacit policy which permitted the unlawful use of force by police officers. (Plaintiff's Complaint, Counts I and II). A policy and custom may be established by failure to train, supervise, or deficiencies in hiring officers. Without a specific allegation from the Plaintiffs the Defendant will address each of these.

(2) Training, Supervision and Hiring Practices.

(A)  Law

The U.S. Supreme Court held that there were "limited circumstances" where a municipality could be liable under 42 U.S.C. § 1983 for failure to train or supervise their employees.  To prevail, the Plaintiffs must establish that the failure to train or supervise was a city policy and that policy caused the officers to violate the Plaintiffs' constitutional rights.  City of Canton v. Harris, 489 U.S. 378, 389-91, 109 S. Ct. 1197 (1989); Kerr v. City of West Palm Beach, 875 F.2d 1546, 1555 (11th Cir. 1989).  The failure to train only becomes deliberate when in light of the duties assigned to specific officers or employees the need for more or different training is so obvious the inadequacy is likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need.  Riley v. Newton, 94 F.3d 632, 638 (11th Cir. 1996).  To establish deliberate indifference the Plaintiffs must present evidence that the city knew of a need to train or supervise in a particular area and the city made a deliberate choice not to take action.  Gold v. City of Miami, 121 F.3d 1442 (11th Cir. 1997).

The Supreme Court has also established a high threshold for the Plaintiffs to establish a claim for negligent hiring.  In Board of County Commissioners of Bryan County, Oklahoma v. Brown, 520 U.S. 397, 117 S. Ct. 1389 (1997), the Court held that "a finding of culpability simply cannot depend on a mere

probability that any officer inadequately screened will inflict any constitutional injury rather, it must depend on a finding that the officer was highly likely to inflict that particular injury suffered by the Plaintiffs." Id. at 1392.

    (B)  <u>The Plaintiffs Cannot Establish Deliberate Indifference.</u>

    In order to prevail, the Plaintiffs must establish that the City of Dothan knew of a need to train and/or supervise in a particular area and made a deliberate choice not to take any action. <u>Board of County Commissioners of Bryan County, Oklahoma v. Brown</u>, 520 U.S. 397, 117 S. Ct. 1382, 1390-91 (1997); <u>Young v. City of Augusta, GA</u>, 59 F.3d 1160, 1171-72 (11th Cir. 1995); <u>Church v. City of Huntsville</u>, 30 F.3d 1332, 1342-46 (11th Cir. 1990). The City of Dothan does not have a policy or custom that evidences a deliberate indifference to anyone's constitutional rights. (Ex. "I", Affidavit of Mayor Pat Thomas). Furthermore the policies that have been adopted and implemented by the City are constitutional in every respect.

    (C)  <u>The Plaintiff Cannot Establish Obvious Need</u>.

    In <u>City of Canton v. Harris</u>, 489 U.S. 378, 109 S. Ct. 1197 (1989), the Supreme Court held open the possibility that the need to train could be so obvious and that a constitutional violation was so likely that liability could be based on a single incident. However, the Supreme Court has only provided one example of where the need to train would be so obvious and that was the use of deadly force

where the municipality failed to provide firearms training to its officers.  See, <u>City of Canton v. Harris</u>, 489 U.S. 378, 390, 109 S. Ct. 1197, 103 L. Ed. 2d 412 (1989).

The Plaintiffs cannot establish an obvious need to train in this case.  In fact, the evidence establishes that all the officers involved in this incident were highly trained.  (Ex. "J", Affidavit of Scott Heath).

(D)     <u>Officer Training</u>

The Dothan Police Department maintains a training division to insure that all officers are trained and meet the minimum yearly training requirements pursuant to Alabama Code § 36-21-51 (1975).  Sgt. Johnson was certified by the Alabama Peace Officer Standards and Training Commission prior to his employment with the Dothan Police Department on November 26, 1990.  Sgt. Johnson received extensive training with the Dothan Police Department including training in the use of force.  In fact, Sgt. Johnson received a four-hour training course on the use of force on January 13, 2004, approximately four months prior to this incident.  (Ex. "J", Affidavit of Scott Heath).

Officer Ash was employed by the Dothan Police on December 29, 2002. While waiting to attend the Police Academy he completed 200 hours of training with the Dothan Police Department Probationary Officer Program.  Officer Ash then completed 480 hours of training at the Police Academy in Selma, Alabama, and was certified as a police officer by the Alabama Peace Officers Standards and

Training Commission.  Officer Ash received additional training on January 13,
2004 from the Dothan Police Department which included training and certification
to carry a taser and a four-hour course on the use of force.  (Ex. "C", Affidavit of
Shane Ash, Ex. "J", Affidavit of Scott Heath).

Officer Long was hired by the Dothan Police Department on November 22,
2002.  He completed the 480 hours training at the Police Academy and was
certified as a police officer by the Alabama Peace Officer Standards and Training
Commission.  After returning from the Police Academy he completed 200 hours
training in the Dothan Probationary Police Officer training program.  Officer Long
has had additional training with the Dothan Police Department, including a four-
hour training class on the use of force January 14, 2004.  (Ex. "F", Affidavit of
Ken Long; Ex. "J", Affidavit of Scott Heath).  The Plaintiff cannot present any
evidence to establish that the City of Dothan made a conscious choice not to train
its officers reflecting deliberate indifference to the constitutional rights of its
citizens as is required by City of Canton v. Harris, 489 U.S. 378, 387, 109 S. Ct.
1197 (1989).  All these officers had received training in the use of force
approximately four months prior to this incident.  Furthermore, the Plaintiffs
cannot establish that the City of Dothan's training program was defective in any
manner.  In fact, during his deposition the Plaintiff Oliver conceded that he had no

idea what training Dothan Police officers receive.   (Ex. "B", Roy Edward Oliver's deposition, p. 38).

   (E)  Supervision

   The Plaintiffs cannot establish that the Defendant City of Dothan had a policy or custom reflecting deliberate indifference to the needs of its citizens regarding the supervision of its officers.  The City of Dothan maintains an Internal Affairs Division, which is responsible for investigating complaints involving police officers.  Any officer found to have violated the Dothan Police Department Procedural General Orders or the Personnel Rules of the City of Dothan, is subject to discipline pursuant to the Dothan Civil Service Act.  If an officer is found to have violated a municipal, state or federal law they are subject to prosecution by the appropriate authority.  (Ex. "K", Affidavit of Ray Owens).

   Sgt. Johnson had no complaints involving excessive or unreasonable force during his 15 years of service with the Dothan Police Department.  Officers Ash and Long had one complaint involving excessive force, on October 31, 2004, five months after this incident occurred.  The complaint involved a suspect arrested for DUI and resisting arrest.  The investigation determined the complaint to be unfounded and the subject was convicted of both charges.  There is no evidence whatsoever that would establish that the City of Dothan knew of a problem with

these officers, or was deliberately indifferent to citizens' rights regarding the supervision of its officers.

(F) <u>Hiring</u>

The Plaintiffs cannot establish that the City had a defective policy or custom regarding the hiring of police officers. The City of Dothan has set strict requirements on the hiring of police officers. A candidate for the position of police officer must undergo extensive screening prior to being hired. The candidate sits for a civil service exam, goes before an applicant review board, must pass a physical and mental examination, take a polygraph test and undergo a background check prior to employment. (Ex. "C", Affidavit of Shane Ash; Ex. "F", Affidavit of Ken Long; and, Ex. "K", Affidavit of Ray Owens).

The Plaintiffs cannot establish that the officers were inadequately screened or that the City of Dothan was aware that the officers were likely to inflict the injuries complained of by the Plaintiffs. See <u>Board of County Commissioners of Bryant County, Oklahoma v. Brown</u>, 520 U.S. 397, 117 S. Ct. 1382, 1389 (1997). During his deposition Oliver admitted he had no idea what criteria or processes are followed in the hiring of Dothan Police Officers. (Ex. "B", Roy Edward Oliver's deposition, p. 38).

In summary, the Plaintiffs have failed to establish two fundamental requisites for holding a municipality liable under 42 U.S.C. § 1983, culpability and

causation. The Plaintiffs have not and cannot establish that their alleged injuries were the result of a municipal policy adopted with deliberate indifference to its known or obvious consequences.  The Plaintiffs have also failed to establish that the municipal policy or custom was the moving force behind their alleged constitutional violations.  Therefore summary judgment must be entered in favor of the Defendant City of Dothan.

## State Law Claim

The Plaintiffs allege a claim against Douglas Johnson and the City of Dothan for assault and battery in Counts III and IV of their complaint.  As previously stated, the court dismissed Douglas Johnson from this case November 14, 2006.  (Document 12).  Therefore, the City of Dothan is the only remaining Defendant.

(1)  The Plaintiff has failed to establish a genuine issue for trial.

Under Alabama law, civil assault is defined as an intentional, unlawful offer to touch the person of another in a rude or angry manner.  Wright v. Wright, 654 So. 2d 542 Ala. 1995).  In this case the officer had probable cause to arrest the Plaintiffs for disorderly conduct.  Therefore officers did not unlawfully touch the Plaintiffs.  Under Alabama Code § 13A-3-27 (1975) a police officer may use that degree of force he reasonably believes is necessary to make an arrest.  In Campbell v. Sims, 686 So. 2d 1227 (Ala. Civ. App. 1996) the Court held that an officer can

use reasonable force to effect an arrest and can only be held liable if more force was used than necessary.  Therefore an officer has the right to use that force he reasonably believes is necessary to overcome an individual's resistance to lawful authority.  See Evans v. Walker, 237 Ala. 385, 187 So. 189 (1939).  In this case Sgt. Johnson sprayed both Plaintiffs with Cap-stun and forced them to the ground when they failed to follow his repeated orders to get down.  Once the Plaintiffs were on the ground, Sgt. Johnson did not use any additional force against them. When Oliver refused and physically resisted Officers Ash and Long's attempts to handcuff him, Officer Ash tased Oliver in order to gain compliance.  Once he was handcuffed, the officer stopped using force.  The Plaintiffs chose to disregard the officers' lawful instructions and the officer used only that force necessary to control and arrest the Plaintiffs.  Therefore, the claims of assault are due to be dismissed.

(2)  Immunity pursuant to Ala. Code § 6-5-338.

Alabama Code § 6-5-338(a) provides immunity to municipal law enforcement officers from tort liability arising as a result of the performance of any discretionary function within the line and scope of their law enforcement duties. Section 6-5-338(b) provides discretionary function immunity to governmental units and agencies authorized to appoint police officers.

In this case it is undisputed that Sgt. Douglas Johnson was working within the line and scope of his employment.  Furthermore Sgt. Johnson was exercising judgment in the enforcement of the criminal laws of the state.  In Ex parte Cranman, 792 So. 2d 392 (Ala. 2000) the Alabama Supreme Court analyzed the immunity issue in terms of state agent immunity rather than ministerial verses discretionary function.  Under Cranman:

> A state agent shall be immune from civil liability in his or her
> personal capacity when the conduct made the basis of the claim
> against the agent is based upon the agent's
>
> .    .    .
>
> (4) exercising judgment in the enforcement of the criminal laws of the
> state including but not limited to, law enforcement officers arresting
> or attempting to arrest persons.

In this case Sgt. Johnson was exercising judgment in arresting the Plaintiff. Sgt. Johnson's use of Cap-stun (pepper spray) to subdue the suspect was proper under the circumstances.  He was alone at the time attempting to take two violent suspects into custody, who were refusing to comply with his orders.  (Ex. "D", Sgt. Douglas Johnson's in-car videotape).  Sgt. Johnson had to make a decision and exercised his judgment on what force he would use to gain the Plaintiffs' compliance.  Immunity under Ala. Code § 6-5-338 can only be lost if the officer's actions were willful, malicious or in bad faith.  Wright v. Wynn, 682 So. 2d 1 (Ala. 1996).  The Plaintiffs have not argued nor can they prove that the officers' actions were willful, malicious or in bad faith.  The officer would be entitled to

discretionary function immunity pursuant to Ala. Code 6-5-338(a) (1975) if he was still a Defendant in the case.

Officer Ash was not named as a defendant in the case however, had he been, he would also be entitled to discretionary function immunity pursuant to Ala. Code § 6-5-338(a) (1975). Ash was working within the line and scope of his employment and exercising judgment in the enforcement of the criminal laws. He used only that force necessary to handcuff and control Mr. Oliver, who was resisting the officers' attempt to handcuff him. In this case all officers would be entitled to immunity under § 6-5-338(a). The City is therefore entitled to the immunity under § 6-5-338(b). Even if the Plaintiffs could establish that the officers were not entitled to immunity under § 6-5-338(a) because they acted maliciously, willfully or in bad faith, the City would still be immune from liability under Ala. Code § 11-47-190 (1975). Ex parte City of Tuskegee, 932 So. 2d 895, 910 (Ala. 2005).

(2) Immunity under Ala. Code § 11-47-190.

Section 11-47-190 provides in part:

No city or town shall be liable for damages for injury done to or wrong suffered by any person or corporation, unless such injury or wrong was done or suffered through the neglect, carelessness or unskillfulness of some agent, officer or employee of the municipality engaged in work thereof while acting in the line of his or her duty. . .

Ala. Code § 11-47-190, provides a municipality immunity from liability for the acts of its agents that are carried out intentionally, in bad faith or with malice. Borders v. City of Huntsville, 875 So. 2d 1168, 1183 (Ala. 2003). In order to succeed under § 11-47-190, Plaintiffs must present evidence that the officers acted negligently, carelessly or unskillfully in order to survive a motion for summary judgment. In this case the Plaintiffs have failed to allege that the officer was negligent, careless, unskilled or even cite the statute in their complaint. (Plaintiffs' complaint). As stated previously, the officers' use of force was constitutionally reasonable and did not violate the Fourth Amendment. Therefore the officers' conduct was not negligent, careless or unskillful and the City would be entitled to immunity pursuant to Ala. Code 11-47-190.

## Conclusion

Plaintiffs' federal claims against the City of Dothan fail because the Plaintiffs' constitutional rights were not violated, the force applied against the Plaintiffs in order to arrest them was constitutionally reasonable in every respect. Furthermore, Plaintiffs' claims against the City of Dothan fail because they cannot show that a policy or custom of the City of Dothan caused the alleged constitutional violation. Plaintiffs' state law claims against the City of Dothan fail because the Plaintiffs cannot establish the element of the charge of assault and battery. Furthermore, the City is entitled to discretionary function immunity under

Alabama Code § 6-5-338(b).  Additionally, the Plaintiffs cannot establish liability against the City of Dothan under Alabama Code § 11-47-190.  Based on the foregoing, summary judgment must be entered in favor of the City of Dothan.

Respectfully submitted this the 29th day of May, 2007

s/ D. Kevan Kelly
D. Kevan Kelly (KEL025)
Assistant City Attorney
City of Dothan
P.O. Box 2128
Dothan, AL 36302
(334) 615-3130

CERTIFICATE OF SERVICE

I hereby certify that on this 29th day of May, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:  Charles N. Reese, Esq.

s/ D. Kevan Kelly
Of Counsel